UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 22-cv-22788-SCOLA/GOODMAN

SAMUEL BARNABY DYER CORIAT;
SHEYLA DYER CORIAT; and
PIERO MARTIN DYER CORIAT,

    Petitioners,

v.

UNITED STATES OF AMERICA and
INTERNAL REVENUE SERVICE, et al.,

    Respondents.
_____/

## REPORT AND RECOMMENDATIONS ON
## RESPONDENTS' MOTION TO DISMISS

Petitioners[1] each filed a petition to quash IRS summonses issued to Petitioners' banks requesting their bank statements from 2016 through 2018, as well as information regarding any benefits obtained from, and withholding taxes applied to, their accounts. Respondents filed a motion to dismiss, arguing generally that the summonses were

---

[1] United States District Judge Robert N. Scola consolidated Case Nos. 22-cv-22788; 22-cv-22777; and 22-cv-22785 -- which "involve petitions to quash Internal Revenue Service ("IRS") summons[es] to bank accounts of [ ] Petitioners, who are siblings and are represented by the same counsel" -- into Case No. 22-cv-22788 on the basis that they each share common questions of both law and fact. [ECF No. 10].

issued in good faith. [ECF No. 11]. Petitioners filed a response, which also requests an evidentiary hearing [ECF No. 18], and Respondents filed a reply [ECF No. 21].

Judge Scola referred to the Undersigned this case "for a ruling on all pre-trial, nondispositive matters and for a report and recommendation on any dispositive matters, consistent with 28 U.S.C. § 636 and Local Magistrate Judge Rule 1." [ECF No. 9].

For the reasons discussed below, the Undersigned respectfully recommends that the District Court **grant** Respondents' Motion to Dismiss and **deny** Petitioners' request for an evidentiary hearing.

## I.     Background[2]

Petitioners are siblings [ECF No. 10] who are citizens and residents of Peru. [ECF No. 1]. Each Petitioner received notice of a summons, which was issued by the IRS to that Petitioner's banking institution(s). The summonses were issued by the IRS at the request of Peru's tax authority, the National Superintendence of Customs and Tax Administration ("SUNAT") pursuant to the Agreement Between the Government of the Republic of Peru and the Government of the United States of America for the Exchange of Tax Information (1990) ("TIEA"), which governs the exchange of taxpayer information between Peru and the United States. [ECF No. 11].

---

[2]     Although Petitioners each filed an independent Petition, the Undersigned will use the submissions in only 22-cv-22788 when describing the background. The Court has already determined that the three cases involve similar questions of law and fact. Further, for purposes of the background, it is necessary to provide only those facts which are shared by Petitioners.

2

Upon receiving notice of the summonses, Petitioners each timely filed a petition to quash the summonses. According to Petitioners, Peru violated its own laws and constitution in issuing the request for assistance. Thus, Petitioners contend that the summonses are unlawful and must be quashed.

## II. Legal Standard

"[S]ummons enforcement proceedings 'are to be summary in nature.'" *United States v. Clarke*, 134 S. Ct. 2361, 2367 (2014) (internal citation omitted). Although the proceedings are adversarial, "courts may ask only whether the IRS issued a summons in good faith, and must eschew any broader role of 'oversee[ing] the [IRS's] determinations to investigate.'" *Id.* (quoting *United States v. Powell*, 379 U.S. 48, 56 (1964)).

In *Powell*, the Supreme Court listed four factors which the Court must consider in determining good faith: (1) "that the investigation will be conducted pursuant to a legitimate purpose"; (2) "that the inquiry may be relevant to the purpose"; (3) "that the information sought is not already within the [IRS's] possession"; and (4) "that the administrative steps required by the [Internal Revenue] Code have been followed." 379 U.S. at 57-58.

"The IRS may satisfy its minimal burden merely by presenting the sworn affidavit of the agent who issued the summons attesting to these facts." *United States v. Medlin*, 986 F.2d 463, 466 (11th Cir. 1993) (citation and internal quotation marks omitted). Once the IRS makes its *prima facie* case for enforcement, "the burden shifts to the party contesting

3

the summons to disprove one of the four elements of the government's prima facie showing or convince the court that the enforcement of the summons would constitute an abuse of the court's process." *La Mura v. United States*, 765 F.2d 974, 979–80 (11th Cir. 1985). "The burden on the contesting party is 'a **heavy** one,' requiring allegations of specific facts and introduction of evidence." *United States v. Leventhal*, 961 F.2d 936, 940 (11th Cir. 1992) (emphasis added) (internal citations omitted).

### III.  Analysis

Respondents included with their initial motion three declarations from Tina Masuda, the "Exchange of Information Program Manager in the Large Business and International Division ("LB&I") of the [IRS]." [ECF No. 11-2]. Each declaration contains similar information, but concerns the separate summonses issued to Petitioners' respective banks. Further, each declaration contains the necessary information to satisfy each of the *Powell* factors.

In Petitioners' response, they concede that "the IRS has made its prima facie case for enforcement of the summons[es] by filing a sworn affidavit by the investigating agent." [ECF No. 18]. However, Petitioners go on to argue that the summonses should be quashed on other grounds "because Peru, as the requesting party, made the request in bad faith." *Id.* According to Petitioners this means that "the IRS was led to issue [the summonses] in bad faith and for an improper purpose, and violative of the TIEA and the Peruvian Constitution." *Id.*

4

Petitioners claim that they may challenge the summonses "on any [other] appropriate ground." [ECF No. 18 (quoting *United States v. Clarke*, 573 U.S. 248, 250, 134 S. Ct. 2361, 2365, 189 L. Ed. 2d 330 (2014) (alteration added by Petitioners)]. Petitioners claim that this is what they are doing -- the "other grounds" being challenging the summonses based on Peru's bad faith, improper purposes, and constitutional violations. But they cite no law supporting their contention that the Court can consider the actions of Peru in assessing whether the *IRS* operated in good faith.

Indeed, in *Clarke*, the Court considered only whether the IRS operated in good faith and, in *Reisman v. Caplin*, 375 U.S. 440, 449, 84 S. Ct. 508, 513, 11 L. Ed. 2d 459 (1964), the case upon which *Clarke* relied, the Supreme Court included as "appropriate grounds" for challenge: (1) allegations that the IRS intended to use the summons for criminal prosecution or (2) that the summons sought information protected by attorney client privilege.

Petitioners' grounds for challenge do not fall into any of those identified categories.

In addition to failing to provide any affirmative law which supports the request to quash, Petitioners fail to address the ample legal authority which thoroughly rejects their contention that the Court may look to the motivations of the foreign country requesting the IRS's assistance or that the Court should require that the IRS conduct its own

independent investigation into the motivations of the foreign country and decline to take at face value the foreign country's representations that it complied with its own laws.

For example, in *Mazurek v. United States*, 271 F.3d 226, 231 (5th Cir. 2001), the Fifth Circuit addressed an argument similar to the one raised by Petitioners:

> Of the four *Powell* factors, the only one that Mazurek could conceivably contest is the "legitimate purpose" requirement. He attempts to do this by arguing that, because he was not a resident of France for the periods implicated by the [French Tax Authority ("FTA")] investigation, any request for information covered by the investigation is not for a legitimate purpose. Essentially, Mazurek contends that, during the time that the determination of his residency status is awaiting final resolution in a French court, the FTA's request cannot be legitimate.
>
> The Fifth Circuit summarily dismissed this argument, stating:
>
> The problem with this reasoning . . . is that Mazurek focuses on the legitimacy of the FTA's investigation, not on the legitimacy of the IRS's compliance with the FTA's request. Yet, to rebut the *Powell* requirement, Mazurek must show that the *IRS* is acting in bad faith. As long as the *IRS* acts in good faith, it need not also attest to—much lest prove—the good faith of the requesting nation. Requiring district courts and the IRS to look into the good faith of the requesting country's investigation would—at least when, as here, the taxpayer concedes that the treaty partner is interested only in civil tax collection—unwisely necessitate an inquiry into the propriety of the FTA's actions under French law.

*Id*. at 231–32 (emphasis added).

This case has been cited with approval in this district. Relying on *Mazurek*, United States District Court Judge Beth Bloom rejected a petitioner's argument that "the Spanish tax authorities were pursuing the case against [the] [p]etitioners in bad faith or for an illegitimate purpose and that there had been no determination in the Spanish courts

6

whether [the] petitioners were in fact residents under Spanish law . . . [b]ecause the purpose or propriety of the Spanish tax authorities is not relevant." *Verges v. United States*, No. 18-CV-60235-BB, 2018 WL 3423965, at *2 (S.D. Fla. June 27, 2018).

Similarly, the Tenth Circuit has held that "[the foreign government's] good faith is irrelevant; what matters is the IRS's good faith in issuing the summons." *Villarreal v. United States*, 524 F. App'x 419, 423 (10th Cir. 2013) (citing *United States v. Stuart*, 489 U.S. 353, 356, 369–70, 109 S.Ct. 1183, 103 L.Ed.2d 388 (1989) for the proposition "that the IRS is not required to establish the good faith of the foreign taxing authority, only its own"). The same principle has also been adopted by the Ninth Circuit:

> Puri cites no authority to support her argument that the court may look beyond a facially proper request to determine the true motivations of the requesting foreign government. Such an inquiry would run counter to what the Supreme Court said in *Stuart*, that "[s]o long as the IRS itself acts in good faith . . . and complies with applicable statutes, it is entitled to enforcement of its summons." 489 U.S. at 370 (emphasis added); *see also Clarke*, 573 U.S. at 254 (stating that "summons enforcement proceedings are to be 'summary in nature,' " and that courts "must eschew any broader role of overseeing ... determinations to investigate [tax liabilities]" (cleaned up)).

*Puri v. United States*, No. 21-55132, 2022 WL 3585664, at *1 (9th Cir. Aug. 22, 2022)[3]; *see also Lidas, Inc. v. United States*, 238 F.3d 1076, 1082 (9th Cir. 2001) ("[T]he IRS need not establish the good faith of the requesting nation in tax treaty cases.").

---

[3]   In a concurring opinion, Judge Patrick J. Bumatay also noted that there are "serious separation-of-powers concerns for even raising the prospect that courts can look through the Executive branch's decision to comply with an international treaty and surmise the motives of a foreign government." *Puri*, 2022 WL 3585664, at *2.

Faced with the overwhelming amount of law which runs contrary to their position, Petitioners argue only that "[t]he Court may not be required to consider Peru's good faith but should consider the foreign nation's purpose in making the request." However, as stated previously, the inquiry into Peru's motivation is not a discretionary decision -- it is an inquiry which this Court is prohibited from making. Attempting to masquerade the term "good faith" with the term "purpose" does not alter this prohibition.

At bottom, Petitioners have conceded that the IRS has sufficiently established a prima facie case for the enforcement of the summonses. In attempting to rebut this prima facie case, Petitioners have put forward no evidence which would support even a slight inference that the *IRS* is knowingly engaging in any type of bad faith. Notably, Petitioners have also not put forward any evidence that Peru is engaged in bad faith; they have attached newspaper articles speaking *generally* about corruption within Peru, Wikipedia articles referencing maxims, and an email authenticated by only attorney rhetoric and speculation. *See, e.g., Clarke*, 573 U.S. at 255 (vacating Eleventh Circuit's decision and holding that "[n]aked allegations of improper purpose are not enough: The taxpayer must offer some credible evidence supporting his charge"); *Sugarloaf Funding, LLC v. United States Dept. of Treasury*, 584 F.3d 340, 350–351 (1st Cir. 2009) (requiring "a sufficient threshold showing that there was an improper purpose"); *Fortney v. United States*, 59 F.3d 117, 121 (9th Cir. 1995) (requiring "some minimal amount of evidence" beyond "mere memoranda of law or allegations" (internal quotations and alterations omitted)); *United*

8

*States v. Kis*, 658 F.2d 526, 540 (7th Cir. 1981) (requiring "develop[ment] [of] facts from which a court might infer a possibility of some wrongful conduct"); *United States v. Garden State Nat. Bank*, 607 F.2d 61, 71 (3d Cir. 1979) (requiring "factual[ ] support[ ] by the taxpayer's affidavits").

Because Petitioners have failed to put forth any evidence which would rebut any of the *Powell* factors, nor have they even contended that the *IRS* falls short in any of the *Powell* factors, an evidentiary hearing is unnecessary. Therefore, the Undersigned respectfully recommends that the District Court **grant** Respondents' Motion to Dismiss and **deny** Petitioners' request for an evidentiary hearing.

### IV.  Conclusion

For the reasons discussed above, the Undersigned **respectfully recommends** that the District Court **grant** Respondents' Motion to Dismiss and **deny** Petitioners' request for an evidentiary hearing.

### V.  Objections

The parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendations within which to file written objections, if any, with United States District Judge Robert N. Scola. Each party may file a response to the other party's objection within fourteen (14) days of the objection. Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to

9

factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY RECOMMENDED**, in Chambers, in Miami, Florida, on February 17, 2023.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Robert N. Scola, Jr.
All counsel of record