United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Samuel Barnaby Dyer Coriat, and others, Petitioners, | ) ) ) |
| v. | ) ) Civil Action No. 22-22788-Civ-Scola ) |
| United States of America, and others, Respondents. | ) ) ) |

### Order Denying Stay Pending Appeal

This matter is before the Court on the Petitioners' motion for leave pending appeal. (Mot., ECF No. 31.) The Government, as the Respondent, has responded in opposition. (Resp., ECF No. 34.) The Petitioners have not filed an optional reply, and the time to do so has passed. Having reviewed the motion, the response, the record, and the relevant legal authorities, the Court **denies** the motion. (**ECF No. 31**.)

**1. Background**

The Petitioners—siblings and Peruvian citizens Samuel Barnaby Dyer Coriat, Sheyla Dyer Coriat, and Piero Dyer Coriat (collectively, the "Coriats" or the Petitioners)—filed petitions to quash IRS summons to bank accounts in their names seeking documents on behalf of the Peruvian tax authority, known as "SUNAT." (Mot. at 1.) Previously, the Court adopted Magistrate Judge Jonathan Goodman's report and recommendations and denied the petitions to quash, finding that Judge Goodman correctly determined that the IRS acted in good faith under the relevant treaty with Peru in issuing the summonses, the Petitioners lacked standing to object to any purported overbreadth in the summonses, and the Petitioners failed to make any overbreadth arguments in front of Judge Goodman. (Order at 2-3, ECF No. 29.)

Now, the Petitioners seek a stay of the IRS's enforcement of the summonses while they pursue their appeal of the Court's order denying the petitions. (Mot. at 1.) They argue that their appeal has a "probable likelihood of success," that they would suffer irreparable harm if the IRS complied with the summonses and transmitted the collected information to SUNAT, and that that there will not be any substantial harm to other parties or the public interest based on a short stay during appeal. (Mot. at 3-7.) The Government, in response, argues that the Coriats cannot establish a likelihood of success on the merits, that there are other remedies available to them which belie any irreparable harm, and that the Government and the public interest would be harmed by noncompliance with the United States' treaty obligations. (Resp. at 2-7.)

## 2. Legal Standard

Courts may grant a stay of proceedings pending an appeal. *See* Fed. R. Civ. P. 62(c). To determine if such a stay is appropriate, a court must consider four factors: "(1) whether the applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder,* 556 U.S. 418, 434 (2009) (citing *Hilton v. Braunskill,* 481 U.S. 770, 776 (1987)).

## 3. Analysis

The Court finds that none of the factors support the issuance of a stay pending appeal here. First, the Petitioners do not demonstrate a strong showing that they are likely to succeed on the merits. Second, the Petitioners will not be irreparably harmed because there are alternative remedies available after the IRS submits the documents to SUNAT. Third, and finally, the issuance of a stay would injure the Government's interests (which, in situations like here, meshes with the public interest).

### A. The Petitioners Do Not Establish a Substantial Likelihood of Success on the Merits

The Petitioners argue that they establish a substantial likelihood of success on the merits because they have raised various viable factual disputes regarding the alleged overbreadth of the IRS subpoenas and were never provided the opportunity of an evidentiary hearing. (Mot. at 3-4.) Further, they argue, they can meet this factor by showing only a "substantial case on the merits" if "the balance of equities . . . weighs heavily in favor of granting the stay." (Mot. at 4 (quoting *Garcia-Mir v. Meese,* 781 F.2d 1450, 1453 (11th Cir. 1986).)

While the Petitioners' understanding of *Garcia-Mir* is correct, their argument misses crucial details—details that the Court previously pointed out in overruling their objections to Judge Goodman's report and recommendations. 781 F.2d at 1453. The problem for the Petitioners here is twofold. First, the Court determined that the Petitioners do not have standing to object to the breadth of the subpoenas, because those subpoenas were issued to third parties (the banks). (Order at 2.) Second, as Court also observed, the Petitioners never raised any of the factual issues they now dispute when the petitions were originally argued in front of the Magistrate Judge. (*Id.*) Instead, they argued them for the first time on this Court's review of the report and recommendations. (*Id.*) Accordingly, the Court does not find the Petitioners to be able to prove a substantial likelihood of success on the merits. And, as the Court observes

below, the balance of equities does not tip in their favor such that a "substantial case on the merits" might do. *Garcia-Mir*, 781 F.2d at 1453.

### B. The Petitioners Would Not Be Irreparably Harmed by the IRS's Compliance with SUNAT's Requests

While the first factor in the Court's analysis is normally the most important, the second factor—the presence of irreparable harm—is the most determinative here. The Petitioners argue that they will suffer two forms of irreparable harm should the IRS be allowed to respond to SUNAT's requests by providing the documents obtained under the subpoenas. First, they assert that "if the Petitioners' appeal is successful, the court could not retrieve the records from Peru or prevent the Peruvian authorities from utilizing the information." (Mot. at 6.) Second, they claim, once the IRS transmits their records to SUNAT, their appeal will become moot. (*Id.*)

Neither argument is supported by case law. First, there are remedies available to the Petitioners in the event that the IRS does transmit the records—meaning that any harm is not irreparable. Second, an appeal is not mooted where the appellants still have a concrete interest in the outcome of the case, even if that interest is small.

Although the United States Supreme Court and the Eleventh Circuit Court of Appeals have not directly addressed the issue of irreparable harm in the context of foreign treaties requiring the Government to provide foreign countries with tax information, the Supreme Court has addressed irreparable harm in the context of responses to IRS subpoenas. *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12-13 (1992). In doing so, the Supreme Court observed that relief may still be afforded even after documents have been turned over to the IRS:

> While a court may not be able to return the parties to the *status quo ante*—there is nothing a court can do to withdraw all knowledge or information that IRS agents may have acquired by examination of the tapes—a court can fashion *some* form of meaningful relief in circumstances such as these. Taxpayers have an obvious possessory interest in their records. When the Government has obtained such materials as a result of an unlawful summons, that interest is violated and a court can effectuate relief by ordering the Government to return the records. Moreover, even if the Government retains only copies of the disputed materials, a taxpayer still suffers injury by the Government's continued possession of those materials, namely, the affront to the taxpayer's privacy. . . . Even though it is now too late to prevent, or to provide a fully satisfactory remedy for, the invasion of privacy that

> occurred when the IRS obtained the information . . ., a court does have power to effectuate a partial remedy by ordering the Government to destroy or return any and all copies it may have in its possession. The availability of this possible remedy is sufficient to prevent this case from being moot.

*Id.*

This logic is fully applicable to the present circumstances. The Court (or the Eleventh Circuit) can order the IRS to destroy or return all of the collected information if the Petitioners' appeal is successful. *See id.* Accordingly, their appeal will not be mooted without a stay. *Id.*; *see also Villarreal v. United States*, No. 11-1594-CIV, 2013 WL 3200084, at *5 (D. Nev. June 21, 2013) (applying *Church of Scientology* in a tax information treaty case and observing that "[t]his court, or the Ninth Circuit (if petitioner were to prevail on appeal), could still fashion some form of relief to petitioner because either court could require the IRS to return and/or destroy any material gained through the summons.").

Additionally, principles of international comity also suggest that, while the Court certainly cannot order the Peruvian tax authorities to do anything with the documents once received, the IRS can request that SUNAT destroy or return the records should the Eleventh Circuit side with the Petitioners. *Villareal*, 2013 WL 3200084, at *5 ("Comity and TIEA treaty cooperation and obligations suggest that Mexico would comply with the same request to return or destroy materials if requested to do so by the United States because courts later found the manner the executive branch obtained the records to be procedurally invalid.").

### C. Enforcing a Stay Would Harm the Government and the Public Interest

Finally, the Court finds that delaying the Government's response to SUNAT's request would harm the Government (and therefore the public interest) by impairing the Government's ability to abide by its treaty obligations. As the Government observes, it is required to use its "best efforts" to assist under the treaty, and that includes an obligation to do so in a timely manner. (Resp. at 7); *United States v. Diversified Grp., Inc.*, No. M 18-304 PKL, 2002 WL 31812701, at *2 (S.D.N.Y. Dec. 13, 2002) (finding that the Government's, and therefore the public's, interests would be harmed by staying enforcement of IRS subpoena on appeal where enforcement of the summonses was supposed to be a summary proceeding but had been ongoing for seven months). This matter has been pending for nine months. The Government, and the public, have an interest in a timely resolution of this matter and compliance with the United States' treaty obligations.

### 4. Conclusion

Accordingly, the Court **denies** the Petitioners' motion to stay pending appeal. (**ECF No. 31**.)

**Done and ordered** in Miami, Florida, on June 2, 2023.

_____
Robert N. Scola, Jr.
United States District Judge